# TRUMBO v. VERNON.

## (133 N. W. 296.)

**Public lands — leaving certificate of purchase in agent's keeping — blank assigment — sale by agent to third party.**

1. Where the plaintiff left a certificate of purchase of land from the board of university and school lands, of which he was the owner, with his agent for safe-keeping, and the assignment thereof was not filled in, and such agent sold it for a valuable consideration to the defendant and delivered the certificate to him after inserting defendant's name in the blank assignment, but defendant had knowledge of the facts, in reference to the ownership of the land by the plaintiff which would cause an ordinarily prudent person to make inquiry, and no such inquiry was made, the defendant is estopped to claim the land against the plaintiff.

**Pubic lands — assignment of certificate of sale.**

2. A person obtains no better title to land by virtue of the assignment only of a certificate of sale from the board of university and school lands than the assignor had.

**Bona fide purchaser of land — notice of facts putting on inquiry.**

3. If a person buys land from one not the owner, with knowledge of material facts concerning the title, without making inquiry as to such ownership, he is not deemed in law a purchaser without notice as against the true owner.

**Public lands — wrongful transfer of certificate by agent — bona fide purchaser.**

4. The evidence is reviewed in the opinion, and *held*, that the defendant is not a purchaser in good faith without notice.

Opinion filed October 31, 1911.

## Appeal from District Court, La Moure county; *Burke,* J.

Note.—The question raised, but not decided, in this case, as to whether the plaintiff was guilty of such negligence in placing the blank assignment in his agent's hands as to estop him from claiming the title to the land as against a bona fide purchaser from the agent, is treated in a note in 29 L.R.A.(N.S.) 252, and the authorities there reviewed show that one who puts papers or securities indorsed or assigned in blank into another's possession is estopped, as against a purchaser in good faith, to claim title thereto.

Action by Moab P. Trumbo against Edward J. Vernon. From a judgment for defendant, plaintiff appeals.

Reversed and remanded.

*David, Warren, & Hutchinson* (*R. A. Green,* of counsel), for appellant.

*Curtis & Curtis,* for respondent.

MORGAN, Ch. J. This is an action to quiet the title to 160 acres of land in La Moure county. The facts may be summarized as the following: Each of the parties claims under a certificate of sale issued and delivered to Donaher and Maben by the board of university and school lands of this state on the 7th day of November, 1902. The price agreed to be paid for the land was the sum of $10 per acre, and they paid to the state at the time of the sale $2 per acre. Subsequently these parties assigned the contract to one Andrew Pfau, who assumed the indebtedness to the state, and on December 15, 1904, Pfau assigned the contract to the plaintiff, who assumed the indebtedness to the state on the contract, and agreed to pay in addition thereto the sum of $1,400 for the 160 acres involved in this suit, and said sum has now been paid to Pfau. The sale to the plaintiff from Pfau was made partly through the agency of one Riale, after Pfau had himself talked with the plaintiff concerning the sale. The assignment was prepared by Riale, and was signed by Pfau and his wife in Riale's office in Ottawa, Illinois, and, after it was signed, the plaintiff told Riale to put the assignment in his safe, to be kept there for him. At this time the assignment was in blank; that is, the name of the plaintiff as assignee was not inserted therein. Later, and in the winter of 1904, and 1905, the plaintiff authorized Riale to find a renter for 320 acres of land owned by him in La Moure county, which included the 160 acres involved in this suit, and he entered into negotiations with the defendant, Vernon, for renting this land, and rented the land for the year 1905, and, under another contract, for the year 1906. Vernon paid the rent under these contracts for these years to the plaintiff. In September, 1906, Vernon wrote the plaintiff, and in the letter asked him what his price was for the land, and plaintiff answered, saying that the price was $24 per acre. This letter was not answered.

This action involves 160 acres only, although the assignments of the original contracts between Donaher and Maben and the state involved 320 acres. There were two contracts, each representing 160 acres.

Pfau had assigned both of these contracts to the plaintiff, although but one of them is involved in this litigation. In the winter of 1906–07 plaintiff learned that he held tax receipts for only 160 acres of this land, and that he had no tax receipts for the 160 acres involved in this suit. He wrote to Riale for an explanation of this fact. Riale answered, saying that he had sold this land to Vernon. The plaintiff made proposition for a settlement with Riale, but nothing was accomplished, and this action was begun against Vernon and Riale to quiet the title to the 160 acres. The defendant Vernon answers by way of counterclaim, and asks that the title be quieted in him; he claiming to be the owner of the land by reason of a purchase of the same in good faith from Pfau. The defendant Riale did not answer.

The assignment to the defendant Vernon was made under the following circumstances: On October 24, 1906, Riale visited Vernon's place near Edgeley, North Dakota, and asked him to purchase the S. W. ¼ of section 36, being the 160 acres involved in this suit. Riale had in his possession at that time the contract between the board of university and school lands and Donaher and Maben, and the assignment thereof by Pfau and wife executed at Ottawa, Illinois, on December 15, 1904, which was delivered to this plaintiff and by him left with Riale for safekeeping. Riale showed these papers—that is, the contract and the assignment—to Vernon. Vernon then told Riale that he would not purchase until he went to Edgeley and saw a banker there. He went to Edgeley on the following morning and saw one Martin, a banker, and asked him "if it was all right to take an assignment in blank" of a school-land contract. The banker telegraphed to the land department at Bismarck, and was informed that the land was in the name of Andrew Pfau. After the receipt of such information from the land department, the banker informed Vernon that the title to this land was in Pfau, and that it was all right. Vernon then bought the land from Riale, and gave him $10 an acre for said 160 acres, and assumed the deferred payments of $8 per acre due the state. Vernon's name was then and there inserted in the blank assignment from Pfau and wife which had been previously delivered to the plaintiff and left with Riale by him for safe-keeping.

From these and other facts to be mentioned, we are to determine which of these claimants is entitled to relief in this action. There is

22 N. D.—13.

no question involved as to notice by virtue of the recording acts. It is not claimed that Riale had authority from the plaintiff to sell this land. He did not pay or offer to pay the plaintiff the consideration received by him for this land. He sold it as his own property, and denies that the plaintiff is entitled to any of the consideration. By reason of a delay of a few months in bringing this action, plaintiff did not assent to the sale, and he did nothing to ratify it.

Vernon's main contention is that he was an innocent purchaser of the land; that plaintiff was guilty of such negligence in placing the blank assignment in Riale's hands as to estop him from now claiming the title to the land as against him. It may be that this would be true if Vernon was not in possession of other material facts in regard to the ownership of the land. It is not necessary, therefore, to determine what Vernon's rights would be had he acted solely on the possession of the title papers by Riale, and what the banker told him. The other pertinent facts that Vernon had knowledge of are the following: He knew that the plaintiff was recently the owner of the land, and had asked him what his selling price was. This was in September, 1906. In October following he purchased the land from Riale. He had known that Riale was acting as plaintiff's agent in renting the land. Vernon admits that he knew that the plaintiff had some interest in the land when he bought it, although he denies that he knew that he owned it at that time. He did not inform Martin, the banker, that he knew that the plaintiff had some interest in the land. About March 15, 1905, Riale wrote Vernon that he was representing the plaintiff in regard to that land. Vernon also knew that the plaintiff was paying for breaking this land. Vernon raised a crop on this land in 1906, and in September of that year—a few weeks before he bought the land of Riale—he wrote the plaintiff as follows: "The wheat on your land is all cut, and shall thresh it as soon as I can get a machine to do it, and I would like to know if you want me to pay the taxes before I send you your share of the money."

Under these facts we think a finding that Vernon had actual knowledge that Trumbo, the plaintiff, was the owner of the land, is shown by the evidence, although he attempts to deny such knowledge. His own letters and admissions completely refute his denial. But there are other facts equally decisive against defendant's contentions. He

admits in his letters that he knew that Trumbo was interested in the land; and this fact, together with the other facts growing out of his renting this land that have been mentioned, are sufficient to have made it incumbent upon him to make inquiries as to the ownership of the land. He had no right to wholly disregard his knowledge of such facts and buy the land without inquiry.

The principle relied on by the respondent is that, "when one of two innocent parties must suffer by the act of a third, he by whose negligence it happened must be the sufferer." But that principle has no application under these facts. The defendant, having purchased with knowledge of the facts mentioned, without inquiry, cannot be deemed an innocent purchaser. The fact that plaintiff left the blank assignment in Riale's hands did not and could not have misled defendant if he had made the investigation suggested by these known facts and easily within his power to investigate. The mere possession of the papers without the name of any assignee in them did not show that Riale had any title to the land. We think the following a correct statement of the law applicable to the facts of this case, as stated in Doyle v. Teas, 5 Ill. 202: "Where the court is satisfied that the subsequent purchaser acted in bad faith, and that he either had actual notice or might have had that notice had he not wilfully or negligently shut his eyes against those lights, which, with proper observation, would have led him to acknowledge, he must suffer the consequences of his ignorance and be held to have had notice, so as to taint this purchase with fraud in law. It is sufficient if the channels which would have led him to the truth were open before him,. and his attention so directed that they would have been seen by a man of ordinary prudence and caution if he was liable to suffer the consequences of his ignorance. The law will not allow him to shut his eyes when his ignorance is to benefit himself, at the expense of another, when he would have had them open and inquiring had the consequences of his ignorance been detrimental to himself, and advantageous to the other." The defendant does not claim that the papers misled him. His claim is that he relied on Riale's statement as to ownership, and the opinion of the banker that the title was all right. The record shows in the cross-examination of the plaintiff that Vernon paid taxes on this land, and paid part of the unpaid purchase price due the state, but it cannot be determined from the evidence

with definiteness the amount of such payments. The plaintiff offered to pay the state, but the money was returned for the reason that Vernon had paid what was due. We deem it to be equitable and just that Vernon should be reimbursed by the plaintiff so far as the money actually paid by him for taxes, and such sum as he paid on the deferred purchase price. The district court will determine on a hearing for that purpose the sums so paid by the defendant, and, on payment of such sum with 7 per cent interest, the district court will order judgment for the plaintiff, quieting the title in him.

The judgment is reversed, and the cause is remanded for such further proceedings, plaintiff to recover his costs and disbursements.

BURKE, J., being disqualified, took no part in the above case.