## KOTZMAN v. CONDIT et al.

No. 22833.    Oct. 16, 1934.

Rehearing Denied Nov. 13, 1934.

W. Otis Ridings, Norman E. Reynolds, and Paul O. Williams, for plaintiff in error.

Langley & Langley and Henry L. Burris, for defendants in error.

PER CURIAM. This action was brought by August Kotzman against W. C. Condit and Pigin Condit to recover on a negotiable promissory note and to foreclose a real estate mortgage securing it. From a judgment for the defendants, the plaintiff appeals.

There is no serious conflict in the material facts, which may be summarized as follows:

The Graves Farm Loan Investment Company, which will be referred to hereafter as "the Investment Company," had its principal office in Pittsburg, Kan., and was engaged in the business of making and negotiating mortgage securities. The plaintiff lived at Frontenac, Kan., and was engaged in the real estate and insurance business. He also acted as a local broker for the Investment Company, and sold its securities to his clients and received commissions for his services, but had no other contact or relationship with the Investment Company. August Marx lived at Radley, Kan., and was a coal miner. He appears to have had but little business experience and spoke the English language with difficulty. H. L. Burris was a lawyer living at Locust Grove in Mayes county, Okla., and acted as the local agent of the Investment Company, with rather general powers and duties. It appears that he took applications for loans, examined the titles, looked after the execution and recording of instruments and the closing of loans. The defendants, husband and wife, were farmers residing in Mayes county, Okla., on the land in controversy. For the purpose of procuring a loan of money the defendants executed a negotiable promissory note to the Investment Company on the 1st day of January, 1929, in the sum of $1,000, and secured it by a mortgage on their farm. The transaction was handled locally by Mr. Burris, who delivered the papers to the Investment Company, but the proceeds of this loan of money were never paid to the defendants, and, therefore, there was a total failure of consideration. August Marx, the coal miner, had $1,000 which he desired to invest. Through a mutual acquaintance he was introduced to the plaintiff, and on the 7th of December, 1929, he delivered his money to the plaintiff for the purpose of buying a security or a loan and the plaintiff gave him a receipt for it. Kate Kotzman, the wife of the plaintiff, had $1,000 on deposit with the Investment Company, which was part of the proceeds of a paid-off loan held by her, and this money was left for reinvestment. The bank account of the plaintiff and his wife was carried in the name of Kate Kotzman, and the money received by the plaintiff from August Marx was deposited in this account on or about the same day it was received. On the 20th day of February, 1929, plaintiff went to the office of the Investment Company and procured the note and the mortgage which had previously been executed by the defendants. The Investment Company indorsed the note to August Marx and executed a formal assignment of the mortgage to him, and thereupon the plaintiff delivered the note, mortgage, and assignment to August Marx. About the 16th of March, 1929, an application was filed at Pittsburg, Kan., for the appointment of a receiver for the Investment Company, and on the 16th of April thereafter a receiver was appointed. On May 14, 1929, an involuntary petition in bankruptcy was filed against the Investment Company, and on the 4th day of November thereafter it was adjudged a bankrupt. The plaintiff learned of the receivership proceedings some time between the 16th and 18th of March, 1929, and some time between the 28th of March and the 6th of April thereafter the plaintiff and two interested friends of his made a trip to Mayes county, Okla., for the purpose of investigating the securities in which they were interested, and, upon their arrival, had an extended conference with Mr. Burris, in the course of which Mr. Burris told the plaintiff that the defendants had never received the proceeds of their loan, that the paper was without consideration, and that there would be trouble about it. When the plaintiff returned home he borrowed $1,000 from his father, which he paid to August Marx on the 8th day of April, 1929, and thereupon August Marx indorsed and delivered the note to the plaintiff with a formal assignment of the mortgage.

On the 27th of June, 1930, the plaintiff filed this action in the district court of Mayes county, Okla. His petition contains the usual allegations in actions of this nature, but, anticipating the defense, alleged:

"That thereafter, to wit, on the 20th day of February, 1929, for a good and valuable consideration by him paid to the owner of said note, the Graves Farm Loan Investment Company, to wit, the sum of one thousand ($1,000) dollars, the said the Graves Farm Loan Investment Company did indorse and deliver to August Marx said note and the said August Marx did thereupon become the owner thereof for value prior to maturity and without notice or knowledge whatsoever of any defect or claim of defense, if any the defendants, or either of them, have to the payment of said

note, and did thereupon become the innocent purchaser and owner thereof; that thereafter, and on the 8th day of April, 1929, for a good and valuable consideration the said August Marx did indorse and deliver said note so held by him, the said August Marx, in the manner and under the conditions aforesaid, to the plaintiff, August Kotzman, and the plaintiff is now the owner and holder of said note, and is, therefore, a purchaser for value prior to maturity."

The defendants filed an answer in which they admitted the execution and delivery of the note and mortgage, and alleged affirmatively that there was a total failure of consideration for the execution and delivery thereof; they further alleged that both August Marx and the plaintiff knew and were informed of the fact that the note was without consideration at the time of the indorsement and delivery of the note to August Marx on the 20th day of February, 1929; that neither August Marx nor the plaintiff paid the Investment Company any consideration for the paper; that the plaintiff paid no money or other things of value to August Marx for the paper, and that the plaintiff caused the mortgage to be assigned to August Marx in the first instance in order that he might avoid having knowledge that the paper was without consideration; that August Marx and the plaintiff procured possession of the paper through deception, fraud or a loan thereof for inspection purposes.

Plaintiff replied by a general denial and realleged that August Marx and he had purchased the paper for a valuable consideration prior to maturity thereof and without any notice whatever of the defenses set forth in the answer, and that both the said August Marx and he were innocent purchasers.

At the trial plaintiff demurred to the defendants' evidence and moved for judgment at the close of the case, both of which were overruled and exceptions saved.

The findings of the court are as follows:

"And the court, having heard the argument of counsel on the facts and law, doth find the issues generally in favor of the defendants, and against the plaintiff, and in addition to such general finding, doth specially find that the defendants executed and delivered the note involved in this suit, and doth specially find that the note involved in this suit was without consideration and that there was a total failure of consideration for the execution and delivery of said note, and doth find that the plaintiff failed to establish by evidence satisfactory to the mind of the court that he acquired the note involved herein in good faith, and the court finds that the prayer of the cross-petition of the defendants should be granted, and the note and mortgage involved herein canceled, set aside, and held for naught."

The plaintiff's contention is that there was no evidence, either competent or incompetent, tending to support the judgment.

On the authority of Beesley v. Nicholson Company, Inc., 148 Okla. 270, 298 P. 607, the defendants claim that the judgment should be affirmed on the theory that the evidence is of such a nature that men of ordinary intelligence might draw different conclusions therefrom.

It is obvious that the rights of the parties must be determined by applying the Uniform Negotiable Instruments Act, which has been in force in this state for many years, in the light of the construction placed thereon by this and other courts of last resort.

In the case of Loomis v. Cole et al., 119 Okla. 203, 249 P. 327, where the facts were similar in many respects to the case under consideration, this court held:

"In an action upon a negotiable promissory note by a holder in due course, where the uncontradicted evidence establishes that plaintiff acquired the note before maturity, for value, and without notice of defects or infirmities in the title of the original payee, the defense of fraud and failure of consideration is not available to the maker, but the burden rests upon him to show bad faith on the part of the holder in acquiring the note by evidence of facts and circumstances which goes further than to raise a mere suspicion. In such case, where there is an utter want of proof to establish the bad faith of the holder, it is prejudicial error for the trial court to overrule a motion of plaintiff for a directed verdict."

In the case of Foster v. Augustanna College & Theological Seminary, 92 Okla. 96, 218 P. 335, this court held:

"The purchaser in good faith and for value of underdue negotiable paper is not chargeable with constructive record notice of defects and infirmities in the title of the transferor not apparent on the face of the instrument; the true test in such cases being the presence or absence of bad faith."

In the case of Jenkins v. Johnson et al., 116 Okla. 17, 243 P. 178, this court again held:

"The purchaser of a promissory note, secured by a real estate mortgage, before maturity, in good faith and without actual notice of any defect in the title of the transferor, takes good and valid title thereto."

In the case just referred to, the facts and

circumstances are so similar to the case under consideration that it is difficult to distinguish, and the reasoning and principles of law stated therein are highly persuasive if not controlling in this case.

We have searched the record and have read the briefs carefully, and it appears from the undisputed evidence that, at the time he took the paper, August Marx came within the Negotiable Instrument Act, as construed and defined by this court, by acquiring the negotiable instrument in good faith, before maturity, for value, and without notice of infirmities. Neither is there any evidence or circumstances in the record on which he could be charged with bad faith. The defendants do not seriously challenge the record in this respect and have not pointed out any evidence or circumstances contrary to the conclusion here reached, but they assert, without supporting the assertion by any authority whatever, that the plaintiff was the agent of both the Investment Company and August Marx, and that the knowledge of the Investment Company of failure of consideration is imputed to the plaintiff, and that the knowledge thus imputed to him is also imputed to August Marx. We are not at all persuaded by this assertion, but will inquire into it. We can find no evidence in the record or circumstances which would charge the plaintiff with knowledge of the failure of consideration or bad faith at the time the paper was delivered to August Marx, unless the knowledge which the Investment Company had may be imputed to him. It is usually held that any knowledge acquired by an agent while acting in the scope of his employment and authority is imputed to the corporation for which he acts, but this principle is based on the assumption that the agent owes a duty and is charged with the responsibility of revealing such knowledge to his principal; there is no corresponding duty or responsibility for the principal to reveal its knowledge to an agent, and, therefore, this rule does not extend to the imputing of knowledge of the principal to its agent. It would appear that the agent must have actual knowledge or such a personal connection with the transaction as would charge him with notice. Pitman v. Walker (Cal.) 203 P. 739; Jenkins v. Johnson et al., 116 Okla. 17, 243 P. 178.

The plaintiff was not an officer, director or stockholder of the Investment Company, and there is no evidence in the record to indicate that he had anything whatever to do with its business, except in the capacity of a broker who occasionally sold its loans for a commission. We, therefore, conclude and hold that the plaintiff did not have either actual or imputed knowledge at the time he sold and delivered the paper in question to August Marx. It, therefore, follows that under no circumstances could August Marx be charged with imputed knowledge even though we should assume, without deciding, that the relation of principal and agent existed between August Marx and the plaintiff.

At the time he purchased the paper from August Marx on the 8th day of April, 1929, the plaintiff had received actual knowledge that the paper was without consideration. He appears to have recognized a moral obligation to buy this paper back from August Marx and relieve him of any possible trouble or embarrassment. In this situation, we will next inquire into the rights of the plaintiff. In 8 C. J. 466, sec. 685, the general rule, supported by a wide range of authorities, is stated as follows:

"The rule as to who is a bona fide holder is subject to an exception where the holder takes from a bona fide holder, in which case he occupies the same position as his transferor, notwithstanding the subsequent holder has actual notice of defenses, was a purchaser after maturity, or is not a purchaser for value."

In the case of Bank of Meno v. Coulter, 94 Okla. 213, 221 P. 495, this court held as follows:

"A bona fide purchaser is not only entitled to protection for his title while it remains in him, but he may also transfer such title to any other person, and with it goes his superior equity as a bona fide purchaser; and, although the grantee of a bona fide purchaser may have notice of outstanding conflicting interests which are a defect upon the title, he may still claim the benefit of the superior equity acquired by his grantor as a bona fide purchaser. But this rule is subject to the exception that a bona fide purchaser cannot reconvey the title, free from prior equities, to a former owner who was charged with notice of such equities. Eaton on Equity, 162."

Again, in the case of Stevens v. Grisso, 91 Okla. 154, 216 P. 671, this court held:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

The same principle is stated by this court

in the case of Owens v. Southwestern Mortgage Co., 101 Okla. 33, 223 P. 870:

"A bona fide purchaser is not only entitled to protection for a title while it remains in him, but he may also transfer such title to any other person, and with it goes his superior equity as a bona fide purchaser. And, although the grantee of a bona fide purchaser may have notice of outstanding conflicting interests which are a defect upon the title, he may still claim the benefit of the superior equity acquired by his grantor as a bona fide purchaser."

The evidence being undisputed that the plaintiff derived his title to the note through August Marx, a holder in due course, and that the plaintiff himself was not a party to any fraud or illegality affecting the instrument, the trial court should have rendered judgment for the plaintiff.

The defendants argue, without citing any authority in support thereof, that there was either a novation or a renunciation by the plaintiff which would preclude him from recovering. They did not plead either one of these as a defense, and all of the evidence offered by the defendants in support thereof was introduced over the objection of the plaintiff on the ground that it was incompetent, irrelevant, and immaterial. But the plaintiff went ahead and introduced all the evidence he had on the subject. In fact, it appears from the record that both plaintiff and defendants offered all the evidence they had on these questions. We will, therefore, inquire into them.

The requisites of a novation have been defined by this court as follows: (1) A previous valid obligation; (2) the agreement of all of the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new one; and it must appear that the creditor unconditionally released the original debtor and accepted another in his stead. Tulsa Ice Co. et al. v. Liley et al., 157 Okla. 86, 10 P. (2d) 1090.

The method by which a negotiable instrument may be discharged by renunciation is provided for in section 11421, O. S. 1931, as follows:

"The holder may expressly renounce his rights against any party to the instrument, before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument, discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon."

This court has held that a party to a ne-gotiable instrument can only be discharged in the manner and form provided for in the Negotiable Instrument Act. Smith v. Minneapolis Threshing Machine Co., 89 Okla. 156, 214 P. 178; Saab v. Clawson, 138 Okla. 126, 280 P. 598.

The facts relied upon by the defendants to support either novation or renunciation may be summarized as follows:

Beginning with the 12th of April, 1929, and after the plaintiff had bought the paper from August Marx, the secretary of the Investment Company and Mr. Burris entered into negotiations with the plaintiff in an attempt to substitute other paper for the note and mortgage involved in this action. They offered him what was represented to be a $600 first mortgage and commission notes secured by second mortgages amounting to about $400, making an aggregate of approximately $1,000. The plaintiff told them that the paper did not look good to him, but at their solicitation he accepted this paper for the purpose of examination. He had an abstract of title examined by his attorney and procured a statement of taxes from which it appeared that there was a prior lien on the land and a substantial amount of unpaid taxes. He concluded that he did not want the paper and returned it to the receiver, who had been appointed for the Investment Company. There is no evidence in the record of any agreement of all the parties to a new contract, or the extinguishment of the old contract, or that the plaintiff ever released the original debtors and accepted another in their stead, either unconditionally or otherwise. Neither is there any evidence in the record that the plaintiff ever surrendered or delivered up to the defendants the note executed by them and on which they were primarily liable; nor is there any evidence in the record that the plaintiff ever executed an instrument in writing in renunciation of his rights as a holder of such paper.

We, therefore, conclude that the defendants have failed to establish either a novation or a renunciation.

For the reasons stated, the judgment is reversed and the cause remanded, with directions to render judgment for the plaintiff.

The Supreme Court acknowledges the aid of Attorneys E. C. Stanard, John L. Goode, and I. C. Saunders in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Stanard, and approved by Mr. Goode and Mr. Saunders, the cause was assigned

to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.