[File No. 6958]

PIERCE TOWNSHIP OF BARNES COUNTY, NORTH
DAKOTA, a Public Corporation, Appellant, v. ALFRED
ERNIE, Respondent.

(19 NW2d 755)

Opinion filed August 22, 1945

*L. A. W. Stephan* and *Rittgers & Hjellum,* for appellant.

*Roy A. Ployhar,* for respondent.

MORRIS, J.  The plaintiff, Pierce Township, instituted an action against the defendant to quiet title to a tract of land containing 2.2 acres, more or less.  Defendant answered denying title of the plaintiff and by a counterclaim asserted that he was the owner of the title in fee simple and asked that the title be quieted in him.  Judgment for the defendant was entered in the court below and the plaintiff appeals.

The plaintiff claims title by virtue of a deed from Clara O. Bloedel, dated December 1, 1941, and recorded in the office of the Register of Deeds of Barnes County on March 8, 1944.  The tract is described by metes and bounds.  Its value lies in that it embraces a gravel pit.

The defendant claims title by virtue of a deed from Clara O. Bloedel, dated July 23, 1943, and recorded September 13, 1943, which purports to convey to the defendant:

"All that part of:

The Northeast Quarter of the Northeast Quarter and the North One Half of the Southeast Quarter of the Northeast Quarter, of Section Five in Township One Hundred Forty-two, Range Sixty One, situated in Barnes County, North Dakota, which now stands of record in the name of Clara O. Bloedel."

This tract includes the gravel pit previously conveyed to the plaintiff.

The defendant bases his claim upon two grounds. His first contention is that the purchase by Pierce Township was ultra vires both as to the township and as to the board of supervisors that negotiated the transaction. He asserts that the township was without power to purchase the tract because it lies outside of the township boundaries and that, in any event, the board of township supervisors had no authority to make the purchase regardless of the location of the tract because the purchase was neither authorized nor approved by the electors of the township at a township meeting.

The defendant's second contention is that he purchased the land from Mrs. Bloedel prior to the recording of plaintiff's deed and that he was an innocent purchaser without notice and for value.

We first consider whether a township board may purchase a gravel pit without authorization or ratification by the electors. In this state an organized township is a body corporate with capacity "To purchase and hold lands within its limits and for the use of its inhabitants subject to the powers of the legislative assembly." Rev Code 1943, § 58–0301. See also 52 Am Jur, Towns and Townships, § 30. The electors of a township have the power at the annual township meeting "To make such by-laws, rules, and regulations as may be deemed necessary to carry into effect the powers granted to the township;" Rev Code 1943, § 58–0307. The record does not disclose any by-laws, rules or regulations adopted by the electors. Section 58–0601, Rev Code 1943, prescribes the general powers and duties of the board of township supervisors. It authorizes them "To manage and control the affairs of the township not committed to other township officers." This section is silent with respect

to the exercise of power to purchase and hold lands within the limits of a township and for the use of its inhabitants, with one exception. Par. 3 authorizes the board of township supervisors "To recommend to the electors the expenditure of a stated amount for the purpose of purchasing building sites, and for purchasing, erecting, locating, or removing any building, township hall, or library building for the use and benefit of the township;". No other authorization with respect to the purchase of real estate appears in either regulations adopted by the electors, minutes of annual meetings or in the statute.

A township does not possess and may not exercise corporate powers not specifically provided by law, except those necessary to the exercise of powers enumerated or granted by the statutes. Rev Code 1943, § 58–0302. The legislature having created townships as bodies corporate it follows that the rights of the township which flow from the powers so granted are determined according to the general rules of law applicable to municipal corporations.

The respondent relies largely upon Caterpillar Tractor Co. v. Detman Twp. 62 ND 465, 244 NW 876. In that case it was held that the board of supervisors of a township has no authority to enter into a contract for the purchase of bridge material without having been authorized by the electors so to do and that a contract so made is void. The plaintiff sought to recover for bridge material furnished and used by the township upon the ground that the township having taken and retained the benefit of the material was estopped to claim irregularities in the purchase thereof. The facts in that case differ materially from the one at bar. There the purported contract had not been completed in that the material had not been paid for. The defense of ultra vires was raised in a suit brought directly against the township to recover the purchase price. It was further held that the acceptance and use of the material thus purchased did not constitute a ratification of the contract but that it could only be ratified by a vote of the electors.

In the case at bar the purchase of the gravel pit, while ultra vires, was completely performed. It was paid for out of town-

ship funds and a deed was executed and delivered to the township officers. The fact that the township board exceeded its authority in making the purchase did not prevent title from passing to the township.

The defendant's challenge to the power of the township itself to acquire the pit in question is more serious. The statute which we have quoted above (Rev Code 1943, § 58–0301) limits the power to acquire real estate to that located within the limits of the township. The purchase of the gravel pit, which was located in an adjacent township, was clearly ultra vires. That, however, does not necessarily mean that the deed is void or that it can be attacked by the defendant in this action.

It is the general rule that a stranger may not attack collaterally a transaction by which a private corporation has acquired title to property on the ground that the acquisition was ultra vires. Phillips v. Phillips, 53 ND 66, 204 NW 985; Puget Sound Nat. Bank v. Fisher, 52 Wash 246, 100 P 724, 17 Ann Cas 526; Illinois Steel Co. v. Warras, 141 Wis 119, 123 NW 656; Thompson, Real Property, Perm ed, § 3133. This rule is also applicable to public corporations. Mills v. Forest Preserve Dist. 345 Ill 503, 178 NE 126; McQuillin, Municipal Corporations, 2d ed, § 1226; Dillon, Municipal Corporations, 5th ed, § 990. Hayward v. Davidson, 41 Ind 212, involved the power of a county to acquire and hold real estate that had been bequeathed to the county. In holding that title to the real estate in question had passed to the county, the court observes concerning the power of counties to take title to property generally, that:

"They are expressly empowered to acquire and hold the title to real estate for a location for county buildings and for a poor farm, and there may be other instances. In these cases, the rule seems to be that, as the corporation may, for some purposes, acquire and hold the title to real estate, it cannot be made a question by any party, except the State, whether the real estate has been acquired for the authorized uses or not. The corporation having legal capacity to take the title, the deed or devise is effectual to convey the title to the corporation."

In Hjelm v. St. Cloud, 134 Minn 343, 159 NW 833, it appeared that the city had entered into an agreement with Swan Hjelm, a man of advanced age, to furnish him food, care, medical attention, and personal attendance during the balance of his life and a decent burial on death, in return for a deed to his home in the City of St. Cloud. After his death his only son and heir sought to set aside the deed upon the ground that the contract between his father and the city was ultra vires in so far as the city was concerned. The court held that the contract had been fully executed on both sides and could not be set aside and the property recovered at the suit of the grantor's heir. The court said:

"A grantor of property to a municipal corporation cannot, after he has received the full consideration for the transfer, recover the property back on the ground that the acquisition of the property was unauthorized. Having parted with the property and received the benefit accruing to him from the transfer, the use of the property by the grantee is a matter of no concern to him."

In this case Pierce Township is a body corporate. It is authorized by statute to take title to real estate within its limits. Thus its power to acquire title is established. The defendant is the grantee of Mrs. Bloedel who had previously deeded the pit to the township. He is in no better position than was the heir of Swan Hjelm in Hjelm v. City of St. Cloud, supra. The defendant having subsequently taken a deed from the township's vendor did not acquire title as against the township because of the ultra vires acts of the township officers. Fritts v. Palmer, 132 US 282, 33 L ed 317, 10 S Ct 93. The fact that the township exceeded its powers in acquiring title to the pit is not a matter of his concern. His attack upon that title is purely collateral.

The next point relied upon by the respondent is that he is a subsequent purchaser in good faith and for valuable consideration and that his title is, therefore, superior to that of the township whose deed was not recorded until after the respondent purchased the property and placed his deed on record. Under

the provisions of Rev Code 1943, § 47–1941, every conveyance not recorded in accordance with the provisions of our recording acts is void as against any subsequent purchaser in good faith and for valuable consideration whose conveyance is first recorded. That the respondent is a subsequent purchaser for valuable consideration is not disputed. The controlling question is whether he is a purchaser in good faith. Section 1–0121, Rev Code 1943, says that:

"Good faith shall consist in an honest intention to abstain from taking any unconscientious advantage of another even though (through) the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious."

Section 1–0125, Rev Code 1943, provides that:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself."

In the light of the foregoing statutes we examine the evidence in so far as it bears upon the question of good faith. The property is located in Uxbridge Township which is in Barnes County adjacent to Pierce Township. The respondent has lived for a number of years about ten rods from the pit in question. This pit is a part of a large bed of gravel covering approximately forty acres. On this large tract are located other pits. One known as the Uxbridge Pit is adjacent to the pit involved in this litigation, the latter being known as the Pierce Pit. The State of North Dakota also owns a pit on this tract. Deeds to all pits were executed by Mrs. Bloedel sometime prior to her sale to the respondent. The deeds to the State and to Uxbridge Township were recorded. Mrs. Bloedel also maintained a gravel pit on this tract of land from which she sold gravel by the yard or load to various purchasers. Only the State Pit was marked by a sign denoting its ownership. The respondent testified that he had no actual knowledge that Pierce Township claimed the property in question until after he had purchased it. He thought he had heard it called the Pierce Pit before he

bought the land. About six months before he made the purchase he talked to the Clerk of Pierce Township and asked him ". . . what kind of papers they had on that pit." The Clerk told him ". . . he didn't know what kind of papers they had." That was all the Clerk said as far as the respondent remembers. The respondent made no inquiry of other officers of the township. Again on being questioned as to whether he had heard that the township had bought the pit the respondent said, "I may have. I wouldn't deny that." He then said, "I relied on the records and the attorney's opinion for the rest." The Clerk's version of the conversation is that, ". . . he asked me if Pierce had a pit, and what papers they had. I told him I didn't know what papers they had but they had a pit, and I said if you want to know more information you ask Art Gregory, the chairman, he knows about the deal."

Mr. Gregory, the Chairman of the Township Board, had heard that the respondent was claiming the Pierce Pit. In March, 1943, he, the clerk, the treasurer, and another member of the board went to see the respondent and asked him if the township did not have a pit on the premises. Gregory testifies that ". . . he said, 'Well, the records don't show that they have.' He said, 'I looked the records up before I bought it, and they didn't show that Pierce had a pit.' 'Well,' I said, 'hadn't you heard that Pierce had a pit here?' He said, 'Yes, I did hear that, but I never believe in anything I hear, and I didn't pay any attention to it.'" Gregory is corroborated by the three township officers who were with him. The respondent's version of this conversation is, "I didn't answer them in that way, I didn't take any stock in it, but I told them I had heard they had some pit there. . . . Heard they had bought a pit there, or were buying a pit."

The chairman of the Board of Supervisors of Uxbridge Township testified that their pit was located adjacent to and immediately north of the Pierce Pit. In Spring of 1943 there was presented to the Board of Supervisors of Uxbridge Township the proposition of loaning gravel to Pierce Township out of the Uxbridge Pit until the Pierce Pit could be opened up,

with the understanding that Pierce Township would pay it back from its pit later. The Board of Supervisors of Uxbridge Township knew that Pierce Township had purchased an adjacent pit and, therefore, permitted the loan of the gravel. This witness testified that the respondent was present at the meeting all of the time during which the discussion took place. The respondent denies that he heard this discussion but admits he was at the meeting. The chairman of the Uxbridge Board also testified that it was common knowledge that Pierce Township owned the pit now in litigation. A former tenant of Mrs. Bloedel testified that in the Spring of 1943 in a conversation with the witness the respondent made reference to "the Pierce pit." This is also denied.

The evidence further shows that sometime prior to the purchase of the property by the respondent Pierce Township took possession of this property, opened up the gravel pit and caused considerable gravel to be hauled therefrom and placed on township roads. It further appears that each of the various pits mentioned throughout the testimony had its own entrance.

To offset the testimony regarding possession by Pierce Township the respondent testified that many individuals hauled from the various pits on the premises before he acquired them and that he paid no attention to whether individuals were hauling for themselves or for someone else. His brother-in-law testified that Pierce Township had no vehicles of its own but hired individuals to haul gravel. He also stated that he had heard street-talk in the nearby village of Wimbledon to the effect that Pierce Township contemplated buying a pit in the Bloedel tract.

In Harry E. McHugh, Inc. v. Haley, 61 ND 359, 237 NW 835, this court made the following statement with reference to the application of the statutes we have cited above:

"A subsequent purchaser to be protected under the recording act against a prior unrecorded conveyance, must be one who has purchased 'in good faith, and for a valuable consideration, . . .' Comp Laws 1913, § 5594. Good faith in this connection implies absence of all information and belief of facts which would render the transaction unconscientious. Section 7286.

And knowledge of facts or circumstances sufficient to put a prudent man upon inquiry as to a particular fact gives constructive notice of the fact itself. Comp Laws 1913, § 7290; Hunter v. Coe, 12 ND 505, 511, 97 NW 869, 871."

In Thompson, Real Property, Perm ed, § 4287, we find this statement:

"A purchaser who has brought to his attention facts which should have put a purchaser on inquiry which, if pursued with due diligence, would have led to knowledge of a lien on, or adverse interest in, property can not be a bona fide purchaser."

As authority for this statement the text cites Shephard v. Van Doren, 40 NM 380, 60 P2d 635.

The record contains an array of circumstances that militate against the good faith of the respondent within the meaning of that term as used in § 47–1941, Rev Code 1943. Pierce Township had sometime prior to the date of the respondent's deed taken possession of the pit, opened it up and hauled gravel therefrom. We do not hold that that possession itself constituted notice of the right of the township, in view of the fact that there were several pits on the same general tract from which various persons procured gravel. On the other hand, the respondent lived but ten rods from the Pierce Pit. He knew that someone had opened it up and was hauling gravel from it. His admissions indicate that he had heard that Pierce Township had bought or was contemplating buying a pit from the Bloedel tract. His carefully worded inquiry to the township clerk is significant. According to his own testimony he asked what kind of papers Pierce Township had on the pit. He made no inquiry from other township officers. The evidence also clearly establishes that the fact that Pierce Township had acquired a pit in the Bloedel tract was quite generally known, if not a matter of common knowledge. The respondent had knowledge of sufficient facts to place him under obligation to make further inquiry regarding the township's right and in view of that obligation he is not a purchaser in good faith. See Trumbo v. Vernon, 22 ND 191, 133 NW 296; Hunter v. Coe, 12 ND

505, 97 NW 869; Frerking v. Thomas, 64 Neb 193, 89 NW 1005; Gress v. Evans, 1 Dak 387, 46 NW 1132.

It is apparent from reading the transcript that the respondent felt that he was entitled to rely on the abstract of title and attorney's opinion and was not under obligation to make inquiry. In explaining why he did not inquire of the other township officers after he had talked to the clerk he stated that he had been on township boards quite a while and the clerk had kept the minutes and records. He said, "I figured if the clerk didn't know it was too bad for the rest of them." He clearly did not understand his full duty as a prospective purchaser of property but it is the performance of the duty and not the understanding of it or lack thereof that determines the rights of the parties. His failure to perform that duty leaves him without the protection that the law affords to an innocent purchaser.

In order to prevent the plaintiff from recovering judgment the respondent would invoke the rule that in an action to quiet title to real estate the plaintiff must rely upon the strength of his own title and not upon the weakness of that of his adversary. See Nord v. Nord, 68 ND 560, 282 NW 507, and cases cited. In this case the plaintiff has a title that is superior to any rights claimed by the respondent. His argument is best answered in the words of the United States Supreme Court in United States v. Oregon, 295 US 1, 79 L ed 1267, 55 S Ct 610:

"A bill to quiet title may not be defeated by showing that the plaintiff's interest, otherwise sufficient to support the bill, is subject to possibly superior rights in third persons not parties to the suit."

The plaintiff's title is not defeasible at the instance of the respondent. The judgment appealed from is reversed.

CHRISTIANSON, Ch. J., and BURR, NUESSLE and BURKE, JJ., concur.