William Herbert HUNT TRUST ESTATE
whose Trustee is Ivan Irwin, Jr.,
Plaintiffs-Appellants,

v.

Russell L. KIKER and Target Energies,
Inc. (the Defendants John H. Kemp, Co-
manche Resources Company, H. Richard
Aslakson and Sylvia J. Aslakson are sev-
ered from this action), Defendants-Ap-
pellees.

Civ. No. 9448.

Supreme Court of North Dakota.

July 26, 1978.

Fleck, Mather, Strutz & Mayer, Bismarck, for plaintiffs and appellants; argued by Russell R. Mather, Bismarck.

John H. MacMaster, Williston, for defendant and appellee Russell L. Kiker.

Murray, Olson, Larivee & Bohlman, Grand Forks, for defendant and appellee Target Energies, Inc.; argued by Bruce E. Bohlman, Grand Forks.

PAULSON, Justice.

This is an appeal by the plaintiff, William Herbert Hunt Trust Estate (hereinafter Hunt), from the judgment of the Dunn County District Court entered on November 14, 1977, in which the court dismissed on its merits and with prejudice Hunt's quiet title action against the defendants Russell L. Kiker (hereinafter Kiker) and Target Energies, Incorporated (hereinafter Target).

Hunt's quiet title action involved a quarter section of land (160 acres) in Dunn County owned by Pete and Lillian Glovatsky (hereinafter the Glovatskys) described as the Northwest Quarter of Section 19, Township 145 North, Range 97 West of the Fifth Principal Meridian (this quarter section of land will be hereinafter referred to as the NW ¼ of Section 19).

On July 22, 1972, the Glovatskys executed and delivered to Hunt a 10-year oil and gas lease on all of their property, which consists of approximately 640 acres and is situated in both Dunn and McKenzie Counties. Hunt's oil and gas lease included the NW ¼ of Section 19. Hunt recorded the lease in McKenzie County on October 6, 1972, but, through inadvertence or otherwise, did not record the lease in Dunn County until January 14, 1977.

The Glovatskys, on December 28, 1976, executed and delivered a mineral deed to John H. Kemp, conveying to him an undivided one-fourth interest in oil and gas and other minerals except "coal and lignite" in the NW ¼ of Section 19. Kemp recorded his deed in Dunn County on December 31, 1976. On January 4, 1977, Kemp leased all of his oil and gas interests in the NW ¼ of Section 19 to Comanche Resources Company. This lease was recorded in Dunn County on January 5, 1977. Thereafter Kemp sold a one-eighth mineral interest to H. Richard Aslakson and Sylvia J. Aslakson.

During January of 1977, Kiker became interested in purchasing mineral rights in Dunn County. Kiker retained Marvin L. Kaiser, a Williston attorney, to assist him in finding potential properties for purchasing mineral rights and to perform title searches of such properties. Kaiser prepared for

Kiker a list of mineral owners having mineral interests adjacent to an oil well which was being drilled at that time in the area. Kiker commenced to contact some of the mineral owners on the list prepared by Kaiser. Kiker contacted the Glovatskys in person on their farm and expressed his desire to purchase the mineral rights in the NW ¼ of Section 19. He was accompanied by Morris Lassey who was assisting him in negotiations. Both Pete Glovatsky and Kiker testified that Glovatsky told Kiker that the NW ¼ of Section 19 was leased to someone else. They both further testified that Pete Glovatsky showed Kiker and Lassey some delay rental receipts which indicated that the Glovatskys had received annual rental payments of $640.00 from Hunt during 1973, 1974, 1975, and 1976. None of the receipts contained a land description. One of the receipts did contain a notation stating "Lease # 58157". Kiker testified that he did not look at these rental receipts when they were presented to him by Pete Glovatsky. The Glovatskys did not have a copy of the lease they had executed with Hunt and, consequently, they were unable to show Kiker the lease when he questioned them about it.

Prior to purchasing any mineral rights from the Glovatskys on the NW ¼ of Section 19, Kiker checked the records in the Dunn County office of the Register of Deeds at Manning, North Dakota. He discovered an oil and gas lease which had been executed from John H. Kemp to Comanche Resources Company. He did not, of course, discover the Hunt lease because it was not recorded in Dunn County at the time. Kiker also requested Kaiser to check the records for the NW ¼ of Section 19 in the Dunn County office of the Register of Deeds. Kaiser did check the records on January 13, 1977. His investigation of such records revealed no lease except that from Kemp to Comanche Resources Company. Kaiser advised Kiker that the Comanche lease would not cover more than the undivided one-fourth mineral interest which the lessor, Kemp, owned on the NW ¼ of Section 19. It is undisputed that Kaiser was not informed by Kiker that Pete Glovatsky

had told Kiker the NW ¼ of Section 19 was leased to someone else. It is also undisputed that Kiker did not mention Hunt's name to Kaiser, nor did he tell Kaiser about the rental receipts which the Glovatskys had displayed to Kiker and to Lassey.

On January 13, 1977, Kiker purchased from the Glovatskys a mineral deed to an undivided one-eighth interest (more specifically, an undivided 20/161.77 acres) in oil and gas and other minerals in the NW ¼ of Section 19, which deed was recorded on that same day, January 13, 1977.

Kiker was aware that Kaiser was the sole shareholder of Target and that, through Kaiser, Target had "put together drilling operations and was capable of doing it". Consequently, on January 13, 1977, Kiker executed an oil and gas lease with Target on the NW ¼ of Section 19, for which Target paid the prevailing lease price of $10.00 per acre. This lease was recorded in Dunn County on the same day, January 13, 1977.

On the following day, January 14, 1977, Kaiser suggested to Kiker that he should contact the Glovatskys to determine whether Kiker could obtain an oil and gas lease on the remaining 100 acres of the NW ¼ of Section 19. Kiker promptly contacted Pete Glovatsky by telephone. Glovatsky informed Kiker, once again, that the NW ¼ of Section 19 had been leased and that he could not, therefore, lease the property to anyone else. Kiker then related to Kaiser, for the first time, that Glovatsky had insisted the NW ¼ of Section 19 was leased to someone else. The record is undisputed that Kaiser had not been informed by Kiker, prior to January 14, 1977, that Glovatsky had told Kiker he had leased the NW ¼ of Section 19 to Hunt.

During January of 1977 Hunt became aware that its oil and gas lease with the Glovatskys was not filed in Dunn County. Consequently, Hunt filed such lease in Dunn County on January 14, 1977.

Hunt commenced an action to quiet title to its oil and gas leasehold on the NW ¼ of Section 19, naming as defendants Kiker,

Target, Kemp, Comanche Resources Company, and the Aslaksons. The action against Kiker and Target was severed from the action against the other defendants and a trial was commenced on June 1, 1977, before the court, without a jury, concerning the issues between Hunt, Kiker, and Target.

On conclusion of the trial, the court filed its findings of fact, conclusions of law, and order for judgment in which the court determined that Kiker and Target were both bona fide purchasers for value without notice of the prior oil and gas lease executed between Hunt and the Glovatskys on the NW ¼ of Section 19. The court further determined that Kiker's mineral deed and Kaiser's lease on the NW ¼ of Section 19 are "paramount and superior to the leasehold interest" of Hunt. Accordingly, judgment was entered on November 4, 1977, dismissing Hunt's action on its merits and with prejudice.

Hunt has filed a timely appeal from the district court's judgment. The following issues have been raised for determination by this court on appeal:

(1) Whether or not Kiker was a bona fide purchaser for value without notice of the prior oil and gas lease executed between Hunt and the Glovatskys on the NW ¼ of Section 19; and

(2) Whether or not Target was a bona fide purchaser for value without notice of the prior oil and gas lease executed between Hunt and the Glovatskys on the NW ¼ of Section 19.

Sections 47–19–41 and 1–01–25 of the North Dakota Century Code are relevant to the determination of these issues. They provide, respectively, as follows:

"*47–19–41. Effect of not recording— Priority of first record—Constructive notice—Limitation and validation.—Every conveyance of real estate not recorded shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance, whether in the form of a warranty deed, or deed of bargain and* sale, or deed of quitclaim and release, of the form in common use or otherwise, *first is deposited with the proper officer for record and subsequently recorded,* whether entitled to record or not, or as against an attachment levied thereon or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance. The fact that such first deposited and recorded conveyance of such subsequent purchaser for a valuable consideration is in the form, or contains the terms, of a deed of quitclaim and release aforesaid, shall not affect the question of good faith of the subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof. This section shall be legal notice to all who claim under unrecorded instruments that prior recording of later instruments not entitled to be recorded may nullify their right, title, interest or lien, to, in or upon affected real property. No action affecting any right, title, interest or lien, to, in or upon real property shall be commenced or maintained or defense or counterclaim asserted or recognized in court on the ground that a recorded instrument was not entitled to be recorded. The record of all instruments whether or not the same were entitled to be recorded shall be deemed valid and sufficient as the legal record thereof." [Emphasis added.]

"*1–01–25. What deemed constructive notice.*—Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself."

■ A purchaser who has actual notice of facts or circumstances which would put a prudent man upon inquiry is deemed to have constructive notice of those facts which such inquiry would in all probability have disclosed had it been properly pursued. *Northern Pacific Railway Co. v. Advance*

*Realty Company,* 78 N.W.2d 705 (N.D.1956); *City of Bismarck v. Casey,* 77 N.D. 295, 43 N.W.2d 372 (1950); *Doran v. Dazey,* 5 N.D. 167, 64 N.W. 1023 (1895). A purchaser who fails to make such inquiry is not protected as a good faith purchaser under § 47–19–41, N.D.C.C., with regard to those prior interests of which he is deemed to have constructive notice by his failure to make such inquiry. *Pierce Tp. of Barnes County v. Ernie,* 74 N.D. 16, 19 N.W.2d 755 (1945).

Hunt asserts that neither Kiker nor Target is a good faith purchaser whose interest is free of Hunt's oil and gas lease on the NW ¼ of Section 19. Hunt bases this assertion on the ground that both Kiker and Target had actual notice of circumstances which would have caused a prudent man to have made further inquiry resulting in actual notice of Hunt's oil and gas lease. Hunt asserts, therefore, that Kiker and Target must be deemed to have had constructive notice of Hunt's oil and gas lease upon their failure to make such reasonable and prudent inquiry.

The trial court concluded that both Kiker and Target were good faith purchasers without actual or constructive notice of Hunt's oil and gas lease and that, consequently, both Kiker and Target acquired their interests in the NW ¼ of Section 19 free of Hunt's prior oil and gas lease. We must examine the record, in light of the foregoing statutes and case decisions, to determine whether or not the trial court erred in its conclusion that both Kiker and Target are good faith purchasers protected under § 47–19–41, N.D.C.C.

■ Prior to Kiker's purchase of his mineral deed from the Glovatskys, it is undisputed that Pete Glovatsky told Kiker the NW ¼ of Section 19 was under lease. It is also undisputed that Glovatsky produced some delay rental receipts which indicated that Hunt had made annual payments to the Glovatskys of $640.00. Kiker testified, however, that he never looked at these delay rental receipts when Pete Glovatsky presented them. Upon learning that Glovatsky did not have a copy of the lease, Kiker made no further inquiry other than

to check the Dunn County register of deed's office to determine whether such a lease was recorded. We conclude, as a matter of law, that Kiker failed to make the type of inquiry which a prudent man would have made under the circumstances. Kiker's seller, Pete Glovatsky, personally informed him that the premises were under lease and showed him rental receipts from the lessee. Faced with this information, Kiker apparently made no attempt to have Glovatsky obtain a copy of the lease when Glovatsky said he did not have one. Nor did Kiker question Glovatsky for more information about the $640.00 annual rental payments which the rental receipts showed that Glovatsky had been receiving from Hunt. Instead, Kiker chose to believe there was no lease without making further inquiries as the following testimony from Kiker reveals:

"Q. [by Mr. Russell Mather, plaintiff's attorney] You were also aware of the fact that Mr. Glovatsky told you that his mineral interest in 19, the NW ¼, was subject to a lease?

"A. He said that he leased his land. I come to the conclusion, due to my experience with oil and gas leases, if it was five years back that possibly payment had not been made and that it cancelled the lease. Something had happened that he didn't have the lease and the County Recorder did not have the lease or that he had leased other property and assumed that it was totally leased. I knew that he had other property but I didn't know how much."

Upon being informed by Glovatsky that the NW ¼ of Section 19 was leased, Kiker had a duty, as a prudent man, to make further inquiry to determine the nature and extent of the lease of which he had been informed. Such an inquiry would have in all probability resulted in Kiker's acquiring actual knowledge that Hunt had a current lease on the NW ¼ of Section 19. We hold that, under the circumstances before him, Kiker failed to make a reasonable and prudent inquiry as to the existence of a prior existing lease on the NW ¼ of Section 19 and

that, by his failure to make such inquiry, Kiker is deemed to have had constructive notice of Hunt's prior existing oil and gas and lease on the NW ¼ of Section. We further hold that Kiker is not a good faith purchaser without notice of Hunt's oil and gas lease and that Kiker's mineral deed is subject to Hunt's oil and gas lease on the NW ¼ of Section 19.

The second issue which we must determine is whether or not the trial court erred in its conclusion that Target is a good faith purchaser without notice of Hunt's prior oil and gas lease on the NW ¼ of Section 19.

Upon purchasing the mineral deed from the Glovatskys, Kiker executed an oil and gas lease with Target on January 13, 1977. Kaiser, the sole shareholder of Target, transacted this business with Kiker on Target's behalf. The evidence in the record is undisputed that Kiker did not inform Kaiser, prior to the execution of the oil and gas lease between Kiker and Target, that Pete Glovatsky had told Kiker that the NW ¼ of Section 19 was leased to someone else. Hunt asserts on this appeal, however, that Kiker's knowledge should be imputed to Kaiser and Target because the lease executed between Kiker and Target was not an arm's length transaction but was the product of an attorney-client and principal-agent relationship between Kiker and Kaiser. Hunt's assertion is unpersuasive.

■■■ The following comments to the Restatement of the Law, Agency 2d (1958), reveal the general rule that a principal's knowledge is not imputed to his agent:

§ 348, Comment b. "Innocent agent of guilty principal. An agent is not liable because of misrepresentations of the principal or of another agent unless he knows or should know of them. He is not affected by the knowledge of facts which the principal or another agent has and which, if known to him, would cause his representations to be fraudulent. An agent who makes untrue statements based upon the information given to him by the principal is not liable because of the fact that the principal knew the information to be untrue. An agent can

properly rely upon statements of the principal to the same extent as upon statements from any other reputable source."

§ 350, Comment b. "The knowledge of another agent or of the principal does not affect the liability of the agent. Thus, an agent who has no reason to know that the instrumentalities which he uses are not suitable for the work, or that the others employed with him are not competent, is not liable for harm caused by reason of that fact."

See, also: Kotzman v. Condit, 169 Okl. 422, 37 P.2d 412, 415 (1934); Luton v. Soper, 94 Mich. 202, 53 N.W. 1054 (1892); 3 C.J.S. Agency § 432 (1973). We adopt the view of the foregoing authorities that, with respect to an agent's liability, the principal's knowledge is not imputed to the agent. Assuming, arguendo, that Kaiser was acting as Kiker's agent upon execution of the lease between Kiker and Target, there is no legal basis upon which to impute Kiker's knowledge to Kaiser.

The trial court made the following pertinent findings of fact with regard to the lease transaction between Kiker and Target:

"9. Before Russell Kiker purchased the minerals from Glovatsky, he was concerned about the development of said minerals. Kaiser told Kiker that he would take a lease to Target Energies, Inc., and develop the property. Kaiser felt confident in his ability to raise the necessary cash to develop the property since he had previously put together other successful drilling operations through Target Energies, Inc. Kiker had invested in one of those operations in the past and felt assured that Target Energies, Inc. would be able to do the job.

"10. . . . Kiker and Kaiser had mutually agreed upon a sum of $10 per acre, as said sum represented the going rate for leases in the area and Kaiser thereupon delivered a check from Target Energies, Inc. to Kiker in the sum of $200. Kiker's primary interest was to have the property developed and the

amount of any delay rental was relatively unimportant. . . ."

The trial court's findings of fact will not be set aside by this court on appeal unless they are clearly erroneous under Rule 52(a) of the North Dakota Rules of Civil Procedure. *In re Estate of Elmer,* 210 N.W.2d 815 (1973). Upon a careful examination of the record we conclude that the foregoing findings of fact by the trial court are not clearly erroneous. Based upon the trial court's findings, it is apparent that the lease entered into between Kiker and Target was based upon legitimate business purposes by both parties who were intending to profitably develop the oil and gas resources on the NW ¼ of Section 19. Although there very well may have been an attorney-client relationship between Kiker and Kaiser for the purpose of having Kaiser perform title investigations for Kiker, there is no evidence to support Hunt's assertion that the lease executed between Kiker and Target was not a bona fide arm's length transaction. Consequently, there is no legal basis upon which the knowledge Kiker possessed, upon executing the oil and gas lease with Target, can be imputed to Kaiser or to Target.

■ Hunt also asserts that Target, through Kaiser, had constructive notice of Hunt's prior oil and gas lease by means of flags, drill holes, and other physical signs on the NW ¼ of Section 19 which were caused by survey and seismographic exploration crews. The trial court made the following pertinent findings of fact in this regard:

"14. Testimony of Mr. Van Hook established that the seismic crew had worked upon the premises in early January, but there was no testimony by anyone that there was any activity on the premises as of January 13, 1977. Hence, even if the presence of the seismic crew could be construed to be 'possession' (and the Court does not conclude that it does or doesn't), the Plaintiff has failed to establish that as of the day that Target Energies, Inc. took the lease. . . ."

Leonard Kostelnak, a farmer who lives three and one-half miles from the Glovatskys' farm, testified, with respect to the dates he observed survey or exploration work on his property and in the area, that:

"A. I don't know. I assume it to have been, the best that I can recall, it was sometime perhaps the middle of January and maybe up to the second or third day of February. It was very cold.

. . . . .

"Q. So as far as you can recall do you know of any other work in the area that you saw Sheehan people performing during the month of January, other than what you have testified to?

"A. They might have been. I don't recall of any others. I am not aware of any. There didn't appear to be a great deal of activity."

Pete Glovatsky testified, regarding exploration activity on his property, as follows:

"Q. Now, do you recall when Sheehan Exploration Company was actually on your property, the date?

"A. I can't recall that. The only thing I know is when we went out there they were out and on our land because it had been pushed out with a dozer and the trail was out across our land.

"Q. Now, do you recall when that trail was pushed out?

"A. No, I don't.

"Q. Okay, do you recall when they actually done the siesmic [*sic*] shooting?

"A. No, I don't. I just can't help you there.

"Q. Is it possible that it could have been in February of 1977?

"A. Anything could be possible. I don't ———. If I knew this was coming up I would have put down the date. This way I could remember."

William A. Van Hook, the field manager for Sheehan Exploration, testified as follows:

"Q. Alright, did you set flags and stakes on Mr. Glovatsky's land in Section 19?

"A. Yes sir.

"Q. And do you recall when those flags and stakes were set?

"A. Sir, I don't remember the exact date of that. I put up stakes on the highway where to get in and out of there. It showed the surveyors how to get into his place.

. . . . .

"Q. You didn't do any shooting on this property until February?

"A. I can't remember.

"Q. You don't remember that?

"A. No sir, I don't.

. . . . .

"Q. You are not on the property every day I take it on the Glovatsky property?

"A. Well no.

"Q. You didn't spend all of that time in that little area?

"A. No. We went through there as fast as possible. If we spent all of that time in one of the places we would lose our jobs.

"Q. So you still have no idea what specific days you may be talking about?

"A. I really don't know. I have to be honest with you."

We conclude that there is substantial evidence to support the trial court's finding that Hunt failed to establish that survey or exploratory activity occurred on the NW ¼ of Section 19 as of January 13, 1977, prior to the execution of the oil and gas lease between Kiker and Target. Consequently, it is unnecessary to determine whether such activity would have given Target constructive notice of Hunt's prior oil and gas lease.

■ The Sheehan Exploration Company, on or about January 6, 1977, filed a notice of intention to perform exploratory oil and gas drilling on various sections of land, including Section 19 of the Glovatsky property pursuant to § 38–08.1–04, N.D.C.C.[1] Hunt asserts that this filing gave constructive notice to Target of Hunt's prior oil and gas lease on the NW ¼ of Section 19. We disagree.

The trial court entered the following findings of fact with regard to this issue:

"11. The Plaintiff relies upon two facts which allegedly impute constructive notice of their leasehold interest to Target Energies, Inc. First, there is the recording of the seismic operation permit by Sheehan Exploration Company which it filed in the Dunn County Register of Deeds office on or about January 6, 1977, said permit not being discovered by Kaiser in his examination of the title. The permit referenced only the fact that seismic work was to be performed on various sections of land, including Section 19, Township 145 North, Range 97 West. There was no mention at all in this notice of the interest in Plaintiff and, indeed, it states that Sheehan's client is Gulf Oil Company. The filing of such a notice is not intended nor designed to give actual or constructive notice of any outstanding leases on the property."

We conclude that Sheehan's filing of a notice of intent to drill, under § 38–08.1–04, N.D.C.C., did not give constructive notice to Target of Hunt's oil and gas lease on the NW ¼ of Section 19. The filing, at most, gave notice that Sheehan Exploration Company was employed by Gulf Oil Company to perform exploratory drilling on various sections of land. Such filing imports no notice as to the identity of oil and gas leases, if any, on the properties on which the exploratory activity is to be conducted.

1. Section 38–08.1–04, N.D.C.C., provides:

"*Filing of notice of intention to engage in drilling.*—Any person desiring to engage in drilling within this state must, prior to actually engaging in such drilling, file a notice of intention to engage in drilling with the county register of deeds in each county in which drilling is to be carried on. The notice of intention shall include the name of the person who intends to drill; his address or principal place of business; the name and address of the resident agent for the service of process on said person; the date upon which drilling will commence; the township, range, section, and quarter-section in which drilling is to be carried on; and the estimated depth of the drill hole. Notices filed with the county register of deeds under this section shall be maintained in a manner separate and apart from any other records or indices concerning the land described in the notice."

We hold that Target is a good faith purchaser for value without notice of the prior oil and gas lease executed between Hunt and the Glovatskys on the NW ¼ of Section 19 and that Target's lease is not subject to Hunt's lease. The judgment of the district court is affirmed in part, reversed in part, and remanded with instructions to modify the judgment in accordance with this opinion.

ERICKSTAD, C. J., and VOGEL and SAND, JJ., concur.

PEDERSON, Justice, concurring specially.

I concur in the result reached by the majority but I believe that it is inconsistent to treat the "determination" that Kiker was a bona fide purchaser in good faith as a *conclusion of law*, and then treat the "determination" that Target was a bona fide purchaser in good faith as a *finding of fact*. Both are mixed questions of fact and law and subject to full review by this Court without the strictures imposed by Rule 52(a), NDRCivP.