[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 361 
This is an action by Harry E. McHugh, Incorporated, a corporation, to quiet title to an easement over property belonging to the defendant and to secure a permanent injunction against interference with the enjoyment thereof. The plaintiff had judgment in the district court and the defendant appeals to this court for a trial de novo.
Prior to 1927 a corporation known as Bovey-Shute Jackson, Incorporated, was the owner of lots numbered from one to six, inclusive, lots 9 and 10, and the south fifty feet of lots 7 and 8, in block 22, of the original townsite of the city of Devils Lake. In 1918 it secured a franchise permitting the construction and maintenance of a spur track in the alley of this block and extending over the rear or south end of the lots above described, and it entered into a spur track agreement *Page 364 
with the Great Northern Railway, binding upon heirs, legal representatives and successors, to permit the railway company to use the track and any extension, connection or diverging spur for the purpose of serving business and industries other than the business and industries of the applicant. Under this franchise and agreement the spur track was constructed. In March, 1927, the plaintiff purchased from Bovey-Shute Jackson, Incorporated, lots 1, 2, 3, 4, 5 and 6, in block 22, together with an easement over the remainder of the lots for the use of the spur track. The conveyance was made by a warranty deed which contained the following provision after the description of the property conveyed: "Also giving and granting to second party the right to the use, for transportation purposes, of the railroad spur track on the rear of Lots Seven, Eight, Nine and Ten of said Block Twenty-two, in accordance with spur track agreement dated August 19th, 1918, between Bovey-Shute Lumber Company and Great Northern Railway Company; provided the track shall not be used by second party for storage purposes; and provided that first party, its successors or assigns, will not cause the same to be removed or discontinued without the consent of second party." This deed was recorded in the office of the register of deeds of Ramsey County on March 12, 1927, and in the course of a few days it was redelivered to the plaintiff with a certificate thereon certifying to the fact that it had been recorded. At the time of recording it the register of deeds noted it in the numerical index only as against lots 1, 2, 3, 4, 5 and 6, failing to make any notation as against the remaining lots 7, 8, 9 and 10. On July 17, 1928, the defendant Haley purchased from Bovey-Shute 
Jackson, Incorporated, and obtained conveyance by warranty deed recorded on the same day, the south or rear fifty feet of lots 7 and 8 and all of lots 9 and 10 in block 22. In purchasing this property the defendant relied on an abstract which failed to show that the lots purchased were affected by the plaintiff's easement, the abstracter, apparently, having been misled by the failure of the register of deeds to make proper notation in the numerical index.
The trial in the district court was concerned with two principal questions: (1) A question as to whether or not the plaintiff's occupancy and use of the premises purchased by it and its limited use or nonuse of the spur track were such as to furnish notice to the defendant of *Page 365 
the existence of the easement — mingled with this is the question as to whether the plaintiff is now precluded to assert its easement as against the defendant on account of conduct which, it is claimed, amounts to an apparent abandonment or waiver. (2) Assuming the defendant not to be chargeable with notice of the plaintiff's easement on account of the appearance of the property and the apparent use or disuse of the track and to be chargeable only with such notice as the record affords, as between the plaintiff and the defendant, which one must sustain the loss incident to the failure of the register of deeds to note the easement upon the numerical index? This is a question of law depending upon a construction of the recording statute.
The true significance of the facts as disclosed in the record can only be determined by examining them in the light of the principles of law applicable to the situation. The easement in question originated in an express grant contained in the deed of Bovey-Shute Jackson, Incorporated, to the plaintiff. Easements so created are not terminated by mere nonuser. 2 Tiffany, Real Prop. 2d ed. § 377. To use the expression of the Court of Appeals of New York in Welsh v. Taylor, 134 N.Y. 450, 460, 18 L.R.A. 535, 543, 31 N.E. 896, 899: "A person who acquires title by deed to an easement appurtenant to land has the same right of property therein as he has in the land and it is no more necessary that he should make use of it to maintain his title than it is that he should actually occupy or cultivate the land." This distinction between the loss of easements resting in grant and those resting upon prescription through mere nonuser seems to find recognition in our statute. Section 5340 of the Compiled Laws of 1913 states the manner in which servitudes are extinguished. Four methods are recognized as follows: "1. By the vesting of the right to the servitude and the right to the servient tenement in the same person. 2. By the destruction of the servient tenement. 3. By the performance of an act upon either tenement by the owner of the servitude or with his assent which is incompatible with its nature or exercise; or, 4. When the servitude was required byenjoyment, by disuse thereof by the owner of the servitude for the period prescribed for acquiring title by enjoyment." (Italics supplied.)
In the preceding sections there is express recognition of two methods of creating servitudes or easements, as in § 5335 where it is provided *Page 366 
that the extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired. When, therefore, in providing for the manner in which a servitude may be extinguished by disuse or nonuser the legislature limited the provision to the case where the servitude was acquired by enjoyment, the implication is clear that if it rested in grant disuse alone would not extinguish it. This effect of the statute is recognized in Jones on Easements, § 864. Of course, this is not to say that nonuser by the owner of the easement coupled with adverse user of the servient tenement for the prescriptive period, or for the period of limitation of actions, in a manner inconsistent with the enjoyment of the easement, would not defeat title. Such adverse user might have this effect whether the easement rested in grant or had been acquired by prescription. Nor is it to say that an easement resting in grant may not be effectively abandoned, but nonuser alone does not constitute abandonment. Jones, Easements, § 866; 9 R.C.L. page 810.
Washburn on Easements Servitudes, 4th ed. at page 717, expresses the rule as follows: "If the easement has been acquired by deed, no length of time of mere nonuser will operate to impair or defeat the right. Nothing short of a use by the owner of the premises over which it was granted, which is adverse to the enjoyment of such easement by the owner thereof, for the space of time long enough to create a prescriptive right, will destroy the right granted."
2 Tiffany on Real Property, 2d ed. page 1379, thus states the rule: "Nonuser in itself does not terminate an easement acquired by grant, and, as above stated, it is at most merely one of the facts from which an abandonment may be inferred. The fact that the nonuser continues for the prescriptive period is immaterial, in the absence of any adverse acts on the part of the owner of the land." And in the same section, at page 1377, it is stated: "There are many cases to the effect that an easement is extinguished by `abandonment' thereof, by which is meant that a nonuser thereof, together with other circumstances, may, as showing an intention to make no further use of it, terminate the easement. The question whether there has been such an abandonment is in each case a question of fact. And it must be established, it has been said, by `evidence clear and unequivocal of acts decisive and conclusive.'" (Italics supplied.) *Page 367 
See also Murphy Chair Co. v. American Radiator Co. 172 Mich. 14, 137 N.W. 791; 19 C.J. 942, and the numerous cases cited in note 31.
In the instant case the plaintiff acquired the easement by grant in March, 1927, so neither the nonuser by the plaintiff nor any adverse user of the defendant could have continued for the period of limitation. At most, then, such nonuser as is shown would merely constitute evidence of abandonment. The plaintiff says that the evidence shows complete abandonment of the use of the spur track by covering it with materials, gravel, implements and débris and the transformation of what was a lumber yard and coal yard having use for the spur track into a sales agency and a garage which had no use for it, and that this was effected immediately after the plaintiff purchased the premises and continued thereafter. But the evidence shows that the lots acquired by the plaintiff were at the end of the spur track and that in acquiring them it evidently contemplated the use of the track, for in the deed it secured the express grant of the easement. It further shows that the spur track branched off from the tracks of the Great Northern Railway upon its right of way and ran down an alley to a point in the rear of the lots purchased by the defendant; that it there diverged from the alley and came upon the defendant's lots and thence upon the plaintiff's lots, leaving sufficient clear space between the alley and the rear of the plaintiff's lots to permit of the construction of coal sheds with compartments or bins opening towards the spur track, so that coal could be unloaded from the track into the bins. When the plaintiff purchased its property from Bovey-Shute Jackson, Incorporated, it made alterations thereon to accommodate its business by converting the principal structure into a garage and making some additional changes to facilitate the servicing of automobiles. In doing this it constructed a tile wall in such a manner as to cut off the end of the spur track and erected another structure of a semi-permanent character which further encroached upon this spur and thus prevented access over the spur track to approximately half of the sheds or bins which had been constructed along the alley. But there remained some 87 feet of clear track on the plaintiff's property. The rear of the property subsequently purchased by the defendant had been fenced and a gate had been constructed across the track. One key to the lock on this gate was held by the railway company for convenience of ingress and egress and another was *Page 368 
held by the plaintiff. This gate had been battered down about the time the defendant purchased the lots. While the alterations were going on in 1927 several carloads of building material were brought in over the spur track and thereafter some of the bins in the coal sheds were leased and occupied by tenants who had occasion to bring in oil and building material in the same manner and to store it there, but the use made of the spur track at this time was somewhat limited compared to its former use by Bovey-Shute Jackson, Incorporated, when the entire property was used for a lumber yard and incidental business. At the time the defendant purchased his property there was some building material belonging either to the plaintiff or to the contractor that had been piled near the track on the rear of lots 7 and 8; also, some crates, oil barrels and other débris stored there. There was also some gravel, both on the plaintiff's property and the defendant's, but it did not cover the rails. In September, 1928, the defendant constructed a fence on his premises, and it was understood by him and the plaintiff that a gate would be constructed and that the plaintiff would have a key. The defendant understood that this was merely to permit the plaintiff to gain access by automobile under a privilege which he voluntarily granted. When this fence was built it was so constructed as to bar the passage of railway cars, a fact which was discovered by the plaintiff the following spring when a protest was at once made.
This, in our opinion, falls far short of being clear evidence of unequivocal acts consistent only with abandonment. The trial court found that there was no abandonment and in his memorandum decision said: "While there was some débris on the track part of the time, the evidence shows it was cleaned up and the track cleared. There was a talk between the parties in the fall of 1928 but plaintiff claims he understood he was to have a gate on the track. In the spring of 1929, plaintiff leased his coal sheds again to the Robertson Lumber Company, who sent a carload of material in on the spur towards those sheds. That clearly indicates that the plaintiff still intended to use his right to the spur track. The court does not think, therefore, that there was any abandonment of the easement by the plaintiff." The evidence when examined, in light of the rule that requires clear proof of abandonment, fully substantiates the view of the trial court. We are clearly of the *Page 369 
opinion that the easement in question could not be lost through mere nonuser and that it was not lost through abandonment.
Was the easement, then, lost to the plaintiff by reason of the fact that the defendant purchased the servient tenement without actual knowledge of the easement and in reliance upon an abstract which failed to show that the lots were affected by the plaintiff's grant, which failure had been induced by the omission of the register of deeds to make proper notation in the numerical index? An answer to this question favorable to the defendant requires a favorable ruling upon two propositions: First, it must be held that the plaintiff was a purchaser without notice; and, second, that the consequence of the failure of the register of deeds to make proper notation in the numerical index must, as a matter of law, be visited upon the plaintiff rather than upon the defendant.
A subsequent purchaser to be protected under the recording act against a prior unrecorded conveyance, must be one who has purchased "in good faith, and for a valuable consideration, . . ." Comp. Laws 1913, § 5594. Good faith in this connection implies absence of all information and belief of facts which would render the transaction unconscientious. Section 7286. And knowledge of facts or circumstances sufficient to put a prudent man upon inquiry as to a particular fact gives constructive notice of the fact itself. Comp. Laws 1913, § 7290; Hunter v. Coe, 12 N.D. 505, 511, 97 N.W. 869, 871. A subsequent purchaser is bound to take notice of the rights that may be evident upon an inspection of the premises, as well as those of which he may learn by an inspection of the records. Smith v. Lockwood, 100 Minn. 221, 110 N.W. 980. Before the defendant, therefore, as a subsequent purchaser of the servient tenement can claim the benefit of the recording act, it must be held that an inspection of the premises purchased would not have afforded notice of the rights claimed by the plaintiff. He necessarily takes subject to the easement if he has notice thereof, either actual or constructive. 2 Tiffany, Real Prop. 2d ed. § 380; 9 R.C.L. 806; 19 C.J. 939. As is said in Murphy Chair Co. v. American Radiator Co. 172 Mich. 14, 137 N.W. 791, supra, at page 28 of 172 Mich., page 796 of the Northwestern Reporter, "The purchaser of an estate which is charged with an easement which is discoverable upon *Page 370 
examination, such as an open and visible roadway, takes his title subject to such easement, to the extent his grantor is bound thereby."
In Pollard v. Rebman, 162 Cal. 633, 124 P. 235, it is held that where a grantor conveys a servient tenement to another who takes without notice of a prior grant of a right of way or of the use of the way and with no knowledge of facts sufficient to put him on inquiry concerning it, the second grantee will take the land free from the burden of the easement; but that (page 634) "If the way is at the time in use, and, although not fenced, is marked on the ground either by the effects of the travel over it or by fences or other bounds, so that it is plainly visible and its use obvious to one who examines the premises, the purchaser is put on inquiry with regard to such easement and cannot claim as a purchaser without notice thereof. . . . He is bound to take notice of that which a reasonably careful inspection of the land would disclose to him." But in that case it was held that there were not sufficient circumstances to put the purchaser on inquiry.
In Hatton v. Cale, 152 Iowa, 485, 132 N.W. 1101, it is held that the existence of a ditch across land puts a purchaser on inquiry as to the authority under which it is maintained regardless of record notice. See also Cook v. Chicago, B. Q.R. Co. 40 Iowa, 451. In Kalinowski v. Jacobowski, 52 Wn. 359, 100 P. 852, it is held that the purchaser of a servient estate is charged with notice by the open and visible use of an easement and is not in such circumstances protected by recording acts. In Edwards v. Haeger, 180 Ill. 99, 54 N.E. 176, it is said that a purchaser of a servient tenement takes it subject to such easements as were apparent from an inspection of the premises and that to affect the subsequent purchaser by implication the apparent sign of servitude must have existed on the premises or the marks of the burden must have been open and visible thereon.
Many additional authorities to the effect that a subsequent purchaser of a servient estate is charged with notice of the easement when such easement is apparent upon a reasonable inspection of the premises will be found collected in notes at 8 L.R.A.(N.S.) 418 and 41 A.L.R. 1442. The principle applied in them is just as applicable to an easement consisting in the right to use a piece of railroad track constructed with a view to rendering a special service as to any other type of servitude. No easement could give much more apparent evidence of its existence *Page 371 
than the right to use a continuous railway track over private land. The rails, their weight and their ordinary use in connection with heavy transportation equipment would at once suggest that they had been rightfully placed with a view to serving more than the temporary needs of those upon whose property they are present.
In the instant case the condition of the premises at the time they were purchased by the defendant was clearly such as to charge the defendant with notice of the existence of the railway track and with such rights therein as were held by the plaintiff as an abutting property owner upon whose lots such track extended. If some of the rails had been torn up or if the physical appearance of the track were such as to indicate that it was not capable of being used or that it was no longer a continuous track, the purchaser might possibly have been justified in assuming that the plaintiff had no rights therein. But such are not the facts in this case. The facts are that the defendant had long been an owner of property across the alley in the same block and knew the use to which the spur track had been put by Bovey-Shute Jackson, Incorporated. He knew the plaintiff had purchased lots from 1 to 6 and he knew that the condition of the track had not been changed to the extent that it was no longer capable of being used. He admitted that he made no inquiries. The track had been in fact used periodically as the plaintiff, the contractors and the plaintiff's tenants had had occasion to use it. We are clearly of the opinion that under these facts the defendant was charged with knowledge independently of the record of what inquiry concerning the track would have disclosed. Hence, the defendant was not a subsequent purchaser in good faith within § 5594 of the Compiled Laws of 1913.
In coming to this conclusion we do not overlook the argument of the appellant with respect to nonuser, nor are we unmindful of the rule that the notice which springs from the condition of the premises is analogous to the notice that comes from an open, visible and exclusive possession. It is said the user must be open and visible. 9 R.C.L. 806. But in this connection regard must be had to the condition of the premises — as to whether or not it was such as to put the purchaser upon inquiry; also, to the nature of an easement. The nature of the right is such that its actual use will be intermittent and it is a thing not capable of "that continuous possession of which lands are ordinarily *Page 372 
susceptible." (9 R.C.L. supra.) To use the language of Chief Justice Gibson in Bird v. Smith, 8 Watts, 434, 441, 34 Am. Dec. 483, "It was not said that it (possession) must be continuous and unceasing; nor could the enjoyment be so, in the case of an easement, for it could not be kept so uninterruptedly in use as to leave the notoriety of it without break or interval; and a rule so strict as to require it, would extinguish the title to it at the coming in of the first purchaser. The law, however, is not so unreasonable as not to allow of those ordinary intermissions that are incident to the business to which the easement is subservient. Moreover, it is sufficient, where it exists, that there is something in the aspect of the premises to put a purchaser on his guard." The condition of the premises in the instant case should have put the purchaser on his guard. Inquiry by him, instead of disclosing either nonuser or abandonment, would have disclosed merely a change in the use of the dominant estate which would probably require less use of the spur than formerly.
Since in the circumstances disclosed in this record the defendant is in no event a purchaser in good faith and as such entitled to the protection of the recording act, it is unnecessary to express any opinion upon the very interesting question of law which counsel on both sides have so thoroughly and ably briefed. It is not only unnecessary to decide the question but in view of the conclusions as to the facts and their legal implications to which we are impelled by the record, obviously any expression concerning this question of law would be properly regarded as obiter. With respect to this question we find ourselves somewhat in the position of the Supreme Court of Utah in the recent case of Boyer v. Pahvant Mercantile Invest. Co. ___ Utah, ___, 287 P. 188. In that case the same question of law was not only thoroughly argued by counsel but it was decided and upon further consideration the opinion was withdrawn and another opinion prepared holding that the mortgage index, though defective, disclosed enough to put an ordinarily prudent examiner on inquiry; whereupon the court mooted but did not decide the question as to who would sustain the loss incident to a deceptive omission from the index.
In thus passing over without decision the question submitted, we must not be understood to be casting any doubt whatsoever upon the prior decisions in this jurisdiction where a similar or analogous question *Page 373 
has been decided. We have reference particularly to Rising 
Isaacs v. Dickinson, 18 N.D. 478, 23 L.R.A.(N.S.) 127, 138 Am. St. Rep. 779, 121 N.W. 616, 20 Ann. Cas. 484; Atlas Lumber Co. v. Canadian Mortg. T. Co. 36 N.D. 39, 161 N.W. 604; Farmers Bank v. Raugust, 42 N.D. 503, 173 N.W. 793; and McGee v. Marshall,54 N.D. 584, 210 N.W. 521. The question is one of statutory construction involving a construction of the recording act and before one can properly claim the benefit of a given construction he should be able to show that he would be benefited thereby. There is perhaps no better illustration of the narrow limits of the question than is afforded by the principal authority relied upon by the appellant, the Supreme Court of Iowa. Judge Dillon, on behalf of the court, filed two opinions on consecutive days arising under different recording acts. In the case of Barney v. McCarty, 15 Iowa, 510, 83 Am. Dec. 427, relied upon by the appellant, it was held under the recording act of Iowa of 1843 that the total omission of the recorder to index a mortgage deprived the record thereof of the power of imparting constructive notice of its existence and contents and that a subsequent purchaser would be protected as against the mortgage so defectively recorded. But on the following day Judge Dillon filed an opinion in Barney v. Little, 15 Iowa, 527, arising under a recording act, cited as § 1213 of the Code of 1851, which required the recorder to index mortgages in such a manner as to show the description of the lands conveyed, holding that a subsequent purchaser was not protected as against a mortgage not so indexed as to give the description of the property affected.
It follows from what has been said that the judgment appealed from must be affirmed. It is so ordered.
CHRISTIANSON, Ch. J., and BURKE, NUESSLE and BURR, JJ., concur. *Page 374