Margaret BANKERS, Plaintiff and Appellant,

v.

Arnold BANKERS, Defendant and Respondent.

No. 8165.

Supreme Court of North Dakota.

Dec. 30, 1965.

Cupler, Tenneson, Serkland & Lundberg, Fargo, for plaintiff and appellant.

Herman F. Wegner, Fargo, for defendant and respondent.

STRUTZ, Judge (on reassignment).

This is an action for divorce on grounds of extreme cruelty. The defendant denies any acts of cruelty on his part, and demands that the plaintiff's complaint be dismissed. The district court, after trial, ordered judgment in favor of the defendant for a dismissal of the plaintiff's complaint, ordered the defendant to make payments for the support and maintenance of the children of the parties, and ordered the defendant to pay attorney fees and costs to the plaintiff. From the judgment entered upon such order the plaintiff has appealed, demanding a trial de novo.

Upon trial de novo on an appeal from a judgment, the Supreme Court must ascertain the facts from the record and, in making its determination, must give appreciable weight to the findings of the trial court. Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697; Belt v. Belt, 75 N.D. 723, 32 N.W.2d 674; Bolt v. Bolt (N.D.), 134 N.W.2d 506.

Turning to the record before us, we find that the plaintiff and the defendant were married on May 21, 1955, at Page, North Dakota, where they resided until the plain-

tiff left the home and moved to Fargo in May of 1963. Four children were born to the marriage. The defendant is a rural mail carrier and earns approximately $6,000 from such employment. He also performs occasional work on the farm of his father-in-law. Because of differences arising between the parties, practically all of which, so far as the record discloses, resulted from financial problems, the plaintiff left the home of the parties in May of 1963 and moved to Fargo, taking their four children with her. She then secured employment as a waitress in the Biltmore Motel, later moving her residence to West Fargo where she was able to obtain cheaper housing. While she was working as a waitress, the children were in the care of a baby-sitter, for which services the plaintiff spent about one-half of her income. The defendant voluntarily paid to the plaintiff $90 a month for the support of the children and later increased his payments voluntarily to $130 a month. In addition, he furnished some money for clothes for the children, for drugs and medical care, and for miscellaneous expenses of the plaintiff.

So far as is disclosed by the record, all of the complaints of the plaintiff are based on the defendant's inability to properly care for the financial needs of the family. Otherwise, he seems to have been what some people would regard as an ideal husband. He helped the plaintiff with the housework, he helped care for the children, and he even did some of the cooking, washing, and ironing. He remembered the plaintiff with gifts on her birthday and at Christmastime. He deposited all of his earnings in a joint account on which the plaintiff and the defendant both wrote checks. He allowed the plaintiff every freedom, even to the point of permitting her, without objection, to carry on correspondence with another man in the service. In fact, the record is replete with certain indiscretions of the plaintiff, but the defendant evidently did not complain and did not counterclaim for a divorce. He merely prayed for a dismissal of the plaintiff's complaint.

It is not disputed by the defendant that, at times, he was in financial difficulties. The plaintiff contends that on occasion she would write a check on the joint account which would bounce, to her great embarrassment; that these financial difficulties were hard on her nerves, making it necessary for her to take sedatives, and caused her great mental anguish. On one occasion, the defendant told the plaintiff that he might as well take his own life and end things, and even asked the plaintiff to shoot him. Plaintiff contends that this caused her great anguish and mental suffering.

Giving due weight to the trial court's findings, we have reached the conclusion that the court was correct in finding that the evidence does not warrant a finding of extreme cruelty on the part of the defendant toward the plaintiff. The acts constituting mental cruelty relate almost wholly to the fact that the defendant was inept at handling the family finances. The evidence is insufficient to warrant a finding of extreme cruelty on the part of the defendant toward the plaintiff. The policy of the law is to conserve, if possible, the marriage relationship and to grant no divorce except upon clear proof, adequately corroborated, of facts sufficient to justify the granting of a divorce under the law. Our courts have great concern that the home be preserved wherever possible and that the marriage relationship be protected, for it is a relationship that is fostered by religion, maintained by society, and should be protected by law. Bolt v. Bolt, supra. Easy divorces should be frowned upon.

If a divorce were granted on the record before us, most of the marriages in the State could be terminated at the will of one or the other of the parties. The sea of matrimony is not always smooth and serene, and each of the parties to a marriage contract is required at times to overlook some shortcomings on the part of the other.

The evidence is insufficient to warrant a finding of extreme cruelty on the

part of the defendant toward the plaintiff. Therefore, the judgment of the district court, dismissing the plaintiff's complaint, is affirmed.

ERICKSTAD and TEIGEN, JJ., concur.

BURKE, C. J., did not participate.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.